UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 09-00963-TLM |
| VICTOR E. THOMPSON and ) | |
| TERESA B. THOMPSON, ) | Chapter 11 |
| ) | |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**INTRODUCTION**

Before the Court is the question of confirmation of the amended plan of reorganization of chapter 11 debtors in possession Victor and Teresa Thompson ("Debtors") dated January 13, 2011, Doc. No. 272 ("Plan").[1] Objections to confirmation were filed by Federal National Mortgage Association ("FNMA") through its servicing agent, IBM Lender Business Process Services, Inc. ("IBM"). Doc. Nos. 292, 293, 311, 312 ("Objections").[2] A confirmation hearing was held

---

[1] All chapter, section and other statutory references are to the Bankruptcy Code, Title 11, U.S. Code, §§ 101-1532, unless otherwise indicated.

[2] The initial objections, Doc. Nos. 292 and 293, were asserted by IBM for its "assignees and/or successors" as well as for IBM as "servicing agent" through the law firm of McCarthy & Holthus, LLP. The later objections – identified as "supplemental" objections – were filed by the same law firm, and identified FNMA as the creditor and IBM as the servicing agent. The Court will hereafter refer to FNMA for the sake of simplicity. There were other objections to

(continued...)

MEMORANDUM OF DECISION - 1

on March 28, 2011. The Court took the issues under advisement on April 11, 2011, at the conclusion of post-hearing briefing. This Decision constitutes the Court's findings and conclusions. Fed. R. Bankr. P. 7052, 9014.

**BACKGROUND AND FACTS**

Debtors, husband and wife, are in the business of buying and developing real estate. Whether they resell such properties or hold them as rental income producing properties has varied with market conditions. Their Plan identifies ten parcels of property on which they propose to restructure debts. Doc. No. 272 at 2-3. Debtors' amended disclosure statement, Doc. No. 273, indicates that many of the parcels were acquired by Debtors personally while others "were purchased by one of [Debtors'] self-settled trusts as title holder, for estate planning purposes, but are considered by law to belong to the Debtors for purposes of this case. . . . [T]he self-settled trusts which were created to acquire and hold title are considered void for purposes of this bankruptcy proceeding, so the properties will be treated as belonging to the Debtors themselves." *Id.* at 2-3.

Debtors identify 30 secured creditors under Class 3 of their Plan. Doc. No. 272 at 4-8. Each secured creditor is further classified into subclasses ranging from "C" to "FF," with each subclass containing a given creditor and the property

---

[2](...continued)
confirmation in addition to FNMA's which were resolved, or represented to have been resolved, and are not addressed in this Decision.

securing the creditor's claim.[3] The issues addressed in this Decision relate to the claims of creditor FNMA (identified as IBM in Debtor's Plan, *see* note 2 *supra*) found in Class 3 subclass "X" and Class 3 subclass "Y" for properties located at 727 Stampede Court, Nampa, ID, and 743 Stampede Court, Nampa, ID (hereinafter referred to collectively as the "Stampede Court Properties").

Douglas and Elizabeth Thompson (the "Thompsons"), Victor's brother and sister-in-law, acquired the Stampede Court Properties in the summer of 2007. They financed the purchases through FNMA's predecessor in interest (First Horizon Home Loans) by executing two promissory notes – one for $247,500 and another for $249,000. *See* Doc. Nos. 292 at 34-36, and 293 at 21-23. The notes were secured by deeds of trust on the Stampede Court Properties. Doc. Nos. 292 at 18-33, and 293 at 6-21.[4] The properties are single-level triplexes located on adjacent parcels. They have been managed and used as rental properties since they were acquired by the Thompsons in 2007.

---

[3] That the alphabetical subclass designation in Class 3 oddly begins with "C" is due to Debtors placing secured real property tax claims in "Class 2" (subclasses A-1 through A-3 for Ada County properties and subclasses B-1 through B-16 for Canyon County properties). The confusion does not end there. Class 2 also contains reference to the Nampa & Meridian Irrigation District, and the Pioneer Irrigation District, as secured creditors (apparently designated as a subclass "B") though the precatory language to Class 3 suggests that the Class 3 creditors "are subordinate [in priority] to Classes 2A-2C as set forth above" (there being, though, no Class 2C). Each secured creditor should be in its own class. The approach is unduly confusing, and only compounded by the alpha-numeric designations and, it would appear, typographic errors.

[4] The parties agreed that the notes and deeds of trust under which the objecting creditor claims its interest in the two Stampede Court Properties, which were attached to FNMA's initial objections to confirmation, Doc. Nos. 292 and 293, could be considered by the Court.

MEMORANDUM OF DECISION - 3

On March 5, 2009, the Thompsons conveyed by warranty deed legal title to each of the Stampede Court Properties to Victor as "Trustee of the 727 Stampede Trust" and "Trustee of the 743 Stampede Trust," with the Thompsons as the trust beneficiaries. *See* Doc. Nos. 292 at 16, and 293 at 4.[5] In conjunction with the transfers of legal title, the Thompsons also conveyed to Victor their beneficial interests in the 727 Stampede and 743 Stampede Trusts.[6] Victor paid nothing to the Thompsons in consideration for the properties and he did not execute any documents to assume the Thompsons' obligations on the notes.

A little over a month later, on April 16, 2009, Debtors filed their chapter 11 petition. Among their assets they listed the Stampede Court Properties, each with a secured claim of $240,000. On January 5, 2011, Debtors filed an objection to claims and motion for determination of secured status of the Stampede Court claims. Doc. No. 264. The objection/motion was directed at IBM but drew no

---

[5] The parties stipulated that the warranty deeds conveying the properties from Douglas and Elizabeth to "Victor Thompson, Trustee of the 743 Stampede Trust" and to "Victor Thompson, Trustee of the 727 Stampede Trust," which were attached to Doc. Nos. 292 and 293, could be considered as part of the evidentiary record.

[6] While the parties agreed that the warranty deeds, notes, and deeds of trust attached to Doc. Nos. 292 and 293 could be considered by the Court, no such agreement was reached regarding the materials attached to Debtors' response to FNMA's objections to confirmation, Doc. No. 300, which materials relate to the trust agreements and to the assignment of the Thompsons' beneficial interests. Nevertheless, Victor's uncontradicted testimony concerning the content and effect of those documents provides an adequate evidentiary basis for finding that the Thompsons' beneficial interests were assigned to Victor. Moreover, at the hearing counsel for IBM and FNMA indicated that her clients did not dispute that the Thompsons assigned their beneficial interests in the trusts to Victor. It appears from the evidence that the transfers of beneficial interest went to Victor only, and not to Teresa or to Debtors jointly.

MEMORANDUM OF DECISION - 4

response. On March 1, 2011, the Court, having received no objections, entered an order establishing the secured amounts of the two claims. Doc. No. 306. That order established an allowed secured claim on the 727 Stampede Court property of $138,100 (resulting in an unsecured claim of $101,900) and an allowed secured claim on the 743 Stampede Court property of $138,400 (leaving an unsecured claim of $101,600). *Id.*

Through this Order and their Plan, Debtors seek to restructure FNMA's claims against the Stampede Court Properties. The Plan proposes to pay the 727 Stampede Court secured claim in the amount of $138,400 at 6% interest over a 30-year period at $823.24 per month plus a reserve for taxes and insurance, and the 743 Stampede Court secured claim in the amount of $138,100 at 6% interest over a 30-year period at $821.45 per month plus a similar reserve. Doc. No. 272 at 7. On the unsecured portions of its claims, treated under Class 4 of the Plan with the other general unsecured creditors, FNMA is to receive "a pro rata share of $5,000.00 per year for a period of five years until a maximum of $25,000" total is paid to the unsecured creditors within the class. *Id.* at 11.[7]

---

[7] The Plan also indicates that in addition to these payments, "Debtors shall contribute the net collected sum from their pending litigations toward payment of this Class." Doc. No. 272 at 11. However, the nature of Debtors' "pending litigations" is unclear. Though Debtors' amended disclosure statement refers to two potential claims held by Debtors, it also indicates that they do not intend to pursue those claims as the likelihood of any meaningful recovery appears to be relatively low. *See* Doc. No. 273 at 4-5. Neither Debtors' Plan nor their amended disclosure statement identifies any other potential or "pending" litigation that would bring additional funds into the estate for distribution to unsecured creditors. The class of unsecured creditors, Class 4,
(continued...)

MEMORANDUM OF DECISION - 5

Although IBM did not respond to Debtors' objection/motion, Doc. No. 264, IBM did file, on February 7, 2011, objections to confirmation of Debtors' Plan, Doc. Nos. 292, 293, which were "supplemented" by the subsequent FNMA objections filed on March 25, Doc. Nos. 311 and 312.

**DISCUSSION AND DISPOSITION**

Debtors here request confirmation under the "cramdown" provisions of § 1129(b). Their Plan must therefore satisfy all of the confirmation requirements set forth in § 1129(a), with the exception of § 1129(a)(8), as well as the requirements of § 1129(b) which require that the Plan "not discriminate unfairly, and is fair and equitable" with respect to each impaired class that has not accepted the Plan under § 1129(a)(8)(A). *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'Ship* (*In re Ambanc La Mesa Ltd. P'ship*), 115 F.3d 650, 653 (9th Cir. 1997) (citing *In re Arnold & Baker Farms*, 177 B.R. 648 (9th Cir. BAP 1994), *aff'd*, 85 F.3d 1415 (9th Cir. 1996)). As the Plan proponent, Debtors bear the burden of proving to the Court by a preponderance of the evidence that these requirements have been met before confirmation may be granted. *Id.*; *see also Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 498-99 (9th Cir. BAP 2003) (explaining that the law of the Ninth Circuit places an

---

[7](...continued)
accepted the Plan. *See* § 1126(c). IBM/FNMA did not submit ballots regarding its unsecured claims that were established by the prior Order.

MEMORANDUM OF DECISION - 6

independent duty on the bankruptcy court to make certain that all requirements for confirmation have been met, whether or not a creditor objects) (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir. 1994)).

In objecting to confirmation of Debtors' Plan, FNMA argues: (1) that the Stampede Court Properties are not property of Debtors' bankruptcy estate and therefore Debtors are prohibited from restructuring FNMA's claims against those properties; (2) that even if the Stampede Court Properties are part of the estate, the due-on-sale clauses in the deeds of trust on those properties limit treatment of its claims to the cure of delinquencies or payment in full of the entire claim through the Plan; (3) that Debtors' Plan improperly attempts to discharge the liability of the Thompsons, who are non-debtors; and, finally, (4) that Debtors' Plan is not proposed in good faith.

FNMA referenced § 1129(a)(3) in its supplemental objections, Doc. Nos. 311, 312. It has not otherwise indicated, either in its briefing or at argument, which other requirements of § 1129(a) it believes Debtors' Plan fails to satisfy. The Court construes FNMA's objections as tantamount to claims that the Plan fails to satisfy § 1129(a)(1) as well as § 1129(a)(3). Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code and § 1129(a)(3) requires that the plan be proposed in good faith and not by any means forbidden by law. The Court also deems FNMA to object that its treatment is not

MEMORANDUM OF DECISION - 7

fair and equitable under § 1129(b)(2).

### A. The Stampede Court Properties are property of Debtors' bankruptcy estate

It is undisputed that Debtors are not obligors on the notes to FNMA. Notwithstanding the lack of contractual privity between Debtors and FNMA, Debtors propose to treat FNMA's nonrecourse claims against the Stampede Court Properties under their Plan. FNMA acknowledges that under *Johnson v. Home State Bank*, 501 U.S. 78 (1991), and its progeny a chapter 11 debtor may restructure a "claim" on property he owns, even though he is not the note obligor to the creditor. *See In re KM Allied of Nampa, LLC*, 2011 WL 1434915, at *2-5 (Bankr. D. Idaho April 14, 2011) (discussing *Johnson* and other authorities). It contends, however, that this case is distinguishable from *Johnson*. FNMA alleges that at the time of filing Victor held only legal title to the Stampede Court Properties as trustee of the 727 Stampede Trust and 743 Stampede Trust, while ownership of the properties remained in the trusts. Therefore, argues FNMA, there are no "claims" against either Debtors personally or against property owned by Debtors that could be treated and restructured under the Plan. *See*, *e.g.*, *First Fed. Bank of Cal. v. Cogar (In re Cogar)*, 210 B.R. 803, 810 (9th Cir. BAP 1997) ("The nonrecourse nature of the restructured loan debt would not prevent [creditor's] alleged claim from being a claim, but the fact that Debtor did not own the property would preclude a 'claim.'").

MEMORANDUM OF DECISION - 8

"Property of the estate" is defined broadly by § 541(a)(1) to include "all legal or equitable interests of the debtor in property as of the commencement of the case." While the question of whether the interests claimed by Debtors are "property of the estate" is a federal one to be decided by federal law, the Court must look to state law – in this case Idaho law – to determine whether and to what extent Debtors had any legal or equitable interests in property as of the commencement of the bankruptcy case. *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000) (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)).

A trust is not itself a separate legal entity that can own property; rather, it is a relationship having certain attributes. *Indian Springs LLC v. Indian Springs Land Inv. LLC*, 215 P.3d 457, 465 (Idaho 2009); *Dennett v. Kuenzli*, 936 P.2d 219, 228 (Idaho Ct. App. 1997). The essential characteristics of a trust are the separation of the legal title from the beneficial interest and the existence of a fiduciary relationship. *DBSI/TRI V v. Bender*, 948 P.2d 151, 163-64 (Idaho 1997) (citing *Estate of Hull v. Williams*, 885 P.2d 1153, 1159 (Idaho Ct. App. 1994)). Legal title to trust property is held by the trustee subject to the equitable interests of the trust beneficiaries. *Indian Springs*, 215 P.3d at 465. This separation of interests is a *sine qua non* of the existence of a trust. *See Gordon v. Secretary of Health & Human Servs.*, 803 F.2d 1071, 1073 (9th Cir. 1986).

MEMORANDUM OF DECISION - 9

FNMA argues that because Victor held legal title to the Stampede Court Properties as trustee of the 727 Stampede Trust and 743 Stampede Trust, those properties were not property of the Debtors at the time of filing and therefore are not property of the estate. It is true that, pursuant to § 541(d), property in which a debtor holds, as of the commencement of the case, only legal title and not an equitable interest is not included in property of the estate. *See Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 18-19 (9th Cir. BAP 2008) ("'[S]omething held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor property of the debtor' for purposes of avoidance actions.") (quoting *Mitsui Mfrs. Bank. v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994)). Yet FNMA's argument ignores the pre-bankruptcy assignment of the Thompsons' beneficial interests in the trusts to Victor. The effect of the assignment was to make Victor both the sole beneficiary and sole trustee of the trusts, thus merging in Victor the legal and equitable title to the properties. As a result, the separation of legal title to the Stampede Court Properties from the beneficial interests in those properties – which in this case lasted only for that brief moment between when the warranty deed and assignment documents were executed – ceased to exist, the trust terminated, and Victor held

the properties free of trust. *See* Restatement (Third) of Trusts § 69 (2003).[8]

The Court therefore concludes Debtors owned the Stampede Court Properties at the time of filing their petition, and that FNMA has "claims" against Debtors that may be treated in chapter 11.

### B. The due-on-sale provisions do not prevent treatment of FNMA's claims against the Stampede Court Properties

FNMA further contends that even if its claims against the Stampede Court Properties may be included in Debtors' Plan, the due-on-sale clauses in its deeds of trust prevent Debtors' proposed treatment of those claims. The provisions in question state, in relevant part:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Doc. Nos. 292 at 28 ¶ 18, and 293 at 16 ¶ 18. As authority for its position, FNMA cites *In re Threats*, 159 B.R. 241 (N.D. Ill. 1993).

In *Threats*, the debtors received title to a home already encumbered by a mortgage. Debtors, however, were not obligated on the underlying note. The

---

[8] The Court has not encountered any Idaho case law expressly articulating that the union of legal and equitable title terminates a trust relationship. However, it is reasonable to assume that Idaho courts would follow this established and logically sound principle of trust law.

MEMORANDUM OF DECISION - 11

mortgage contained a due-on-sale clause, which caused the amount secured by the mortgage to become due in full upon transfer of the home without prior authorization. After acquiring the home, the debtors allowed the note to fall into arrears. The debtors filed for chapter 13 relief and filed a plan which proposed to de-accelerate the loan and cure the arrearages on the note. The creditor mortgagee objected. *Id.* at 242. The bankruptcy court found that although the creditor had a nonrecourse claim against the estate, the debtors could not de-accelerate the loan and cure the mortgage arrearages through their plan because such treatment would impermissibly modify the creditor's rights in violation of § 1322(b)(2). *Id.* at 243.

In addition to being non-binding on this Court, *Threats* is clearly distinguishable. *Threats* relied on the restrictions on the modification of the rights of a creditor secured by the debtors' principal residence found in § 1322(b). Section 1123(b)(5), the applicable provision in this chapter 11 case, contains language identical to that of § 1322(b)(2):

> a plan may . . . modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

(Emphasis added). However, neither of the Stampede Court Properties at issue here is the Debtors' principal residence. Thus the restrictions on the modification of home mortgages contained in § 1322(b)(2) and § 1123(b)(5) do not apply.

FNMA has provided no authority to support the proposition that a debtor

MEMORANDUM OF DECISION - 12

may not modify the rights of a creditor, contractual or otherwise, whose claim is secured by real property that is *not* the debtor's principal residence where the loan documents contain a due-on-sale clause.  Indeed, § 1123(b)(5), subject to § 1129(b)(2), allows for the fair and equitable modification of such rights in the chapter 11 context.  *See In re Real Pro Fin. Servs., Inc.*, 120 B.R. 216, 219 (Bankr. M.D. Fla. 1990) (concluding that creditor's argument that bankruptcy court has no power to modify or alter a mortgage with due-on-sale clause is "wholly without merit"); *In re Coastal Equities, Inc.*, 33 B.R. 898, 905 (Bankr. S.D. Cal. 1983) ("[D]ue-on-sale clause is not something so sacrosanct that it is immune from modification in a bankruptcy setting."); *see generally Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1075 (9th Cir. 2002) ("Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights.") (quoting *In re PPI Enters., Inc.*, 228 B.R. 339, 344-45 (Bankr. D. Del. 1998)).  Therefore, the Court finds that the due-on-sale clauses in the deeds of trust do not prohibit Debtors' from restructuring FNMA's nonrecourse claims against the Stampede Court Properties.

### C. The Plan does not discharge the liability of Douglas and Elizabeth Thompson on the underlying notes

FNMA next argues that the Plan improperly attempts to discharge the

Thompsons' personal liability on the notes. The Court disagrees.

FNMA takes issue with Article VII of the Plan which provides that payment of the "allowed secured value" of liens through the Plan will result in the satisfaction and release of those liens.[9] FNMA's argument fails to distinguish between the Thompsons' obligations on the notes and the deeds of trust securing those obligations. Satisfaction and removal of the liens through the Plan does not discharge the Thompsons from their personal liability on the underlying notes. To the extent the Thompsons are liable to FNMA on the notes under applicable nonbankruptcy law, they will remain so despite the Plan's modification of FNMA's rights to look to the Stampede Court Properties as security for those obligations.

### D. Debtors' Plan is proposed in good faith

Finally, FNMA asserts that Debtors' Plan has not been proposed in good faith. A plan is proposed in good faith under § 1129(a)(3) where it fairly achieves a result consistent with the objectives and purposes of the Code. *Sylmar Plaza*, 314 F.3d at 1074. Good faith is to be determined based on the totality of the circumstances in each particular case. *Id.*

As factual support for its claim, FNMA points to the timing of the

---

[9] As mentioned *supra*, the allowed secured values of FNMA's liens on the Stampede Court Properties for purposes of distribution under Debtors' Plan were previously established by Court Order at $138,100 (727 Stampede Court) and $138,400 (743 Stampede Court).

MEMORANDUM OF DECISION - 14

Thompsons' transfer of the Stampede Court Properties to Victor, which occurred a little over one month before Debtors filed their petition; the familial relationship between Debtors and the Thompsons; the Thompsons' failure to seek consent, as required by the terms of the notes and deeds of trust, before executing the transfer; and the nature of the transfer itself (*i.e.*, the lack of consideration and Victor's willingness to take the properties "subject to" the deeds of trust).  From these facts, argues FNMA, the only reasonable inference that may be drawn is that the transfers were part of a manipulative and bad faith scheme to bring the properties into the bankruptcy and effect *de facto* loan modifications through the chapter 11 process without requiring the Thompsons to file.

In response, Debtors argue, and Victor testified, that the Thompsons transferred the Stampede Court Properties to him because they were having difficulty managing and maintaining the properties on their own; that Debtors had been assisting the Thompsons in that regard for some time; and that Debtors and the Thompsons had been contemplating the transfer for close to a year before Debtors filed even though the transfer did not actually occur until roughly one month before the bankruptcy filing.

In evaluating the totality of the circumstances in this case the Court concludes that Debtors' Plan is proposed in good faith.  FNMA's objection

regarding good faith relates primarily to the prepetition conduct of Debtors.[10] Though the evidence demonstrates an informal and unsophisticated approach to the use of trusts and other aspects of the prepetition transfer of the Stampede Court Properties, these features do not appear limited to Debtors' dealings with FNMA. Rather, they were consistent with Debtors' lay approach to real estate issues generally. There was insufficient evidence to suggest that this was part of an overall manipulative scheme or to demonstrate the malicious and bad faith intent suggested by FNMA. The Court finds Victor's testimony concerning the facts surrounding the Properties' history, management and transfer credible. Debtors also made full disclosure of their intent to treat and restructure FNMA's secured claims on the Stampede Court Properties throughout the course of this two-year case, providing ample opportunity for opposing evidence to be developed and presented. Though a legitimate issue is presented, the record before the Court, and

---

[10] The Court notes that although arguably relevant to the § 1129(a)(3) inquiry under the "totality of circumstances" test, evidence of Debtors' prepetition conduct provides minimal assistance in determining whether Debtors' Plan is proposed in good faith as the good faith standards required to *file* a chapter 11 petition are different from those for *proposing* a plan of reorganization. *See Pac. First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*, 164 B.R. 99, 103 (9th Cir. BAP 1994); *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 171 (9th Cir. BAP 1988); *accord In re Madison Hotel Assocs.*, 749 F.2d 410, 424-25 (7th Cir. 1984). A chapter 11 petition may be dismissed for cause under § 1112(b) if it appears that the petition was not filed in good faith. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). The test under § 1112(b) is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. *Id.* For a plan of reorganization to be proposed in good faith as required by § 1129(a)(3) the plan must achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *Sylmar Plaza*, 314 F.3d at 1074.

MEMORANDUM OF DECISION - 16

the totality of the circumstances, meet Debtors' burden of preponderating evidence on the element of § 1129(a)(3). Accordingly, the Court finds that the Plan satisfies that good faith requirement.

Having determined, over FNMA's objections, that Debtors' Plan meets the requirements of §§ 1129(a)(1) and (a)(3), the Court turns to the remainder of the confirmation requirements of §§ 1129(a) and (b). Based on its review of the Plan and the evidence presented at hearing, the Court concludes that Debtors' Plan meets all the necessary requirements of §§ 1129(a) and (b). This includes meeting the fair and equitable standard of § 1129(b)(2) as to FNMA.

**CONCLUSION**

Based on the reasons set forth above, FNMA's objections will be overruled and Debtors' amended chapter 11 Plan, Doc. No. 272, will be confirmed. Debtors shall submit an appropriate order.

DATED: May 17, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 17